52 F.3d 769
 42 Fed. R. Evid. Serv. 100
 Benny WATKINS, Appellant,
v.
M. SCHRIVER, individually and as a Springdale Policeman;
Robert Lewis, Individually and as a Springdale Policeman;
Jerry Corken, Individually and as a Springdale Policeman;
City of Springdale, Arkansas, A Municipal Corporation;
Northland Ins. Co.; John Doe, Employees of the City of
Springdale, Appellees.
 No. 94-2722.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1995.
Decided April 20, 1995.
Rehearing Denied May 24, 1995.
 
 James G. Lingle, Rogers, AR, argued (Jennifer Horan, Fayetteville, AR, on the brief), for appellant.
 Mark R. Hayes, North Little Rock, AR, argued, for appellees.
 Before McMILLIAN, FAGG, and WOLLMAN, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 In June 1992, Benny Watkins filed suit under 42 U.S.C. Sec. 1983 against the city of Springdale, Arkansas, and officers Mike Schriver, Robert Lewis, and Jerry Corken individually, seeking recovery for the injuries he received while in the city drunk tank. Watkins is now permanently paralyzed and faces the remainder of his natural life as a quadriplegic. Before trial the parties agreed to bifurcate the proceedings against the city and the individual defendants, so that in the event there was a verdict in favor of the individual defendants the parties would not have to expend the additional effort attempting to establish the city's liability. The jury returned a verdict in favor of all three individual defendants. Watkins' subsequent motion for a new trial and other post-judgment relief was denied. Watkins appeals, asserting several errors on the part of the district court.[1] We affirm.
 
 I.
 
 2
 In the early morning hours of June 7, 1991, officer Schriver responded to a 911 call regarding a disturbance involving an intoxicated Watkins, who possibly also had overdosed on drugs. When Schriver arrived he found Watkins, who indeed was intoxicated, being subdued by some friends. Officer Lewis arrived shortly thereafter. Watkins had been ranting and headbutting people in his drunken state and was also abusive towards the officers upon their arrival. Although Watkins was not wearing a neck brace, the officers were informed that he had a broken neck.[2] Watkins was eventually arrested due to his abusive, threatening behavior when no one at the residence claimed that they could be responsible for him, and he was taken to the emergency room to be checked for drugs.
 
 
 3
 At the hospital Watkins continued to be violent and abusive to the officers and hospital personnel. An examination revealed that Watkins had not overdosed on any drugs, but was merely intoxicated. There was conflicting testimony as to whether the officers told hospital personnel of Watkins' neck condition, but in any event hospital records did not note the presence of such a condition, and Watkins' neck was not examined at this time. Watkins was then taken to the police station where he was placed in the drunk tank by officers Lewis and Corken. The exact course of events at the police station that night was the main point of contention at trial.
 
 
 4
 Watkins claims that officer Lewis threw him into a wall, causing further trauma to his neck that left him paralyzed. Watkins produced an eyewitness, Mike Daniels, who was also in the drunk tank, to detail this story. Daniels initially gave a statement several days after the incident to the effect that the officers did nothing wrong and that Watkins stumbled and fell during a belligerent, intoxicated tirade when he was brought to the cell. Daniels recanted that story at trial, however, and testified that officer Lewis had grabbed Watkins by the scruff of the neck and waist and rammed him into the cell wall. Daniels also testified that the officers then left Watkins lying on the cell floor for a substantial period of time without providing any medical attention.
 
 
 5
 The officers countered that Watkins was extremely drunk and verbally abusive, although he had calmed down physically. When they escorted Watkins to the drunk tank, he jerked free of officer Lewis and stumbled and fell across the cell, hitting his own head on the wall at a point where it meets a concrete slab that is raised several inches off the floor. The officers also testified that they had no idea about the extent of Watkins' injury until much later because he continued to curse at them while in his drunken state on the floor. Only when they noticed that Watkins appeared to have a cut over his eye did the officers determine that additional medical attention was necessary and ask Watkins if he wanted to return to the hospital.
 
 II.
 
 6
 As an initial matter, the appellee officers have filed a motion to supplement the record with some correspondence between the parties relating to discovery. Because Watkins has no objection, we grant the motion and will view the additional materials with the submission of this case.
 
 A.
 
 7
 Watkins argues that the district court erred by refusing to allow Dr. Knox to testify that Watkins' injury was more consistent with being thrown into the wall than a slip and fall. Doctor Knox testified that the injuries sustained by Watkins in the jail cell were the result of a blow to the top or back of the head. The district court allowed this testimony, along with further testimony that such an injury required a substantial amount of force. Watkins then attempted to have Dr. Knox bolster Daniels' story by testifying that the nature of the blow was such that it was more likely caused by being thrown into the wall than a slip and fall. This opinion was based on Dr. Knox's review of officer Lewis' deposition description of the events at the police station. The district court ruled that Dr. Knox could testify as to all of the factors he considered in assessing Watkins' injury, but did not allow Dr. Knox to testify that Daniels' version of the events at the jailhouse was more credible than that of the officers because Dr. Knox was in no better position to make that determination than the jury and his testimony would therefore be speculative.
 
 
 8
 The admissibility of expert testimony is limited by Federal Rule of Evidence 702. Such testimony is properly admissible if it is scientifically based and will assist the trier of fact in determining a fact in issue. See Daubert v. Merrell Dow Pharmaceuticals, Inc., --- U.S. ----, ----, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993); Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc., 35 F.3d 1226, 1230 (8th Cir.1994). Such testimony must be sufficiently founded in scientifically valid reasoning to establish its reliability. Daubert, --- U.S. at ----, ----, 113 S.Ct. at 2796, 2799. The district court's ruling as to the exclusion of such testimony will be reversed only for an abuse of discretion.
 
 
 9
 Watkins fails to adequately explain how Dr. Knox's expertise as a neurologist enables him to testify that the injury was more consistent with being thrown into a wall than with a stumble into the corner. Doctor Knox was not certified at trial as an expert in either accident reconstruction or forensic medicine. Further, under cross-examination Doctor Knox admitted that he had warned Watkins that he could be paralyzed from a slip and fall when he had earlier advised him to undergo surgery to correct his problem. The proffered testimony was therefore merely an attempt to "suppl[y] the fact finder with no information other than what [Dr. Knox] believe[d] the verdict should be." Williams v. Wal-Mart Stores, 922 F.2d 1357, 1360 (8th Cir.1990). Accordingly, because Dr. Knox was not qualified to testify as to the truth of Watkins' allegations, the district court did not abuse its discretion in refusing to allow Dr. Knox to speculate and then opine as to the specific manner in which the blow was received. This case essentially boiled down to a swearing contest between the officers on one side and Daniels on the other, and the jury apparently chose to believe the officers' version of the facts. This case involves an unfortunate set of circumstances, but the jury was adequately equipped to believe whichever version of the facts it deemed more credible. See Williams v. Pro-Tec, Inc., 908 F.2d 345, 348-49 (8th Cir.1990) ("Expert testimony may be properly excluded if the jury ... is equally able to draw the asserted conclusion.").
 
 B.
 
 10
 Watkins also alleges that the district court improperly refused to allow evidence relating to additional incidents of alleged police misconduct. Watkins claims that this evidence would have been admissible to show intent or absence of mistake or accident under Rule 404(b) of the Federal Rules of Evidence. Watkins further argues that the city failed to provide appropriate information in conjunction with his requests for discovery. This, Watkins alleges, led to the untimely discovery of new probative evidence of another incident of misconduct by officer Lewis that necessitates vacating the judgment.
 
 
 11
 The city contends that it properly complied with all of Watkins' discovery requests and that the district court did not abuse its discretion in refusing to admit the additional materials. Further, the city contends that any additional discovery would not have changed the result in this case. We agree. Not only did counsel for Watkins have admittedly "unfettered access" to police files, but such additional evidence would not likely have been admitted in this stage of the bifurcated proceeding. When the parties agreed on their own motion to bifurcate the trial, they were aware that this type of evidence would be unavailable in the action against the individual officers. Accordingly, the trial court did not abuse its discretion in refusing to admit the evidence offered at trial and also did not clearly abuse its discretion in refusing to vacate the judgment on the strength of Watkins' newly offered evidence. See Atkinson v. Prudential Prop. Co., 43 F.3d 367, 371 (8th Cir.1994) (standard of review for denial of motion to vacate judgment); Baxter Int'l, Inc. v. Morris, 11 F.3d 90, 92 (8th Cir.1993) (same).
 
 C.
 
 12
 Watkins' remaining claims of error are either without merit or have not been preserved for review.
 
 
 13
 The judgment is affirmed.
 
 
 
 [1]
 The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas
 
 
 [2]
 Watkins originally injured his neck in an automobile accident sustained when he was driving while intoxicated. On May 26, 1991, Dr. Luke Knox diagnosed Watkins with a misalignment of the 6th and 7th vertebrae of his cervical spine. At that time, Dr. Knox told Watkins that if he did not either undergo surgery or wear a halo vest he risked further injury and possible paralysis. Watkins eventually agreed to surgery, but had not undergone any such treatment at the time of his arrest