# United States Court of Appeals for the Federal Circuit

2008-1068, -1115

SUNDANCE, INC. and
MERLOT TARPAULIN AND SIDEKIT MANUFACTURING COMPANY, INC.,

Plaintiffs-Cross Appellants,

v.

DEMONTE FABRICATING LTD.
and QUICKDRAW TARPAULIN SYSTEMS INC.,

Defendants-Appellants.

Thomas C. Wettach, Cohen & Grigsby, P.C., of Pittsburgh, Pennsylvania, argued for plaintiffs-cross-appellants. Of counsel on the brief were Kevin J. Heinl and Robert C. Brandenburg, Brooks Kushman P.C., of Southfield, Michigan.

Richard L. Rainey, Covington & Burling LLP, of Washington, DC, argued for defendants-appellants. With him on the brief were Roderick R. McKelvie, Scott C. Weidenfeller, and Roger A. Ford.

Appealed from: United States District Court for the Eastern District of Michigan

Senior Judge Avern Cohn

# United States Court of Appeals for the Federal Circuit

2008-1068, -1115

SUNDANCE, INC. and
MERLOT TARPAULIN AND SIDEKIT MANUFACTURING COMPANY, INC.,

Plaintiffs-Cross Appellants,

v.

DEMONTE FABRICATING LTD.
and QUICKDRAW TARPAULIN SYSTEMS, INC.,

Defendants-Appellants.

Appeals from the United States District Court for the Eastern District of Michigan in Case No. 02-CV-73543, Senior Judge Avern Cohn.

_____

DECIDED:  December 24, 2008
_____

Before DYK, PROST, and MOORE, <u>Circuit Judges</u>.

MOORE, <u>Circuit Judge</u>.

Plaintiffs-Cross Appellants Sundance, Inc. and Merlot Tarpaulin and Sidekit Manufacturing Co., Inc. (collectively, Sundance) sued Defendants-Appellants DeMonte Fabricating Ltd. and Quick Draw Tarpaulin Systems, Inc. (collectively, DeMonte) in the United States District Court for the Eastern District of Michigan for infringement of claim 1 of U.S. Patent No. 5,026,109 (the '109 patent).  A jury concluded that claim 1 was infringed but invalid for obviousness under 35 U.S.C. § 103.

Following the jury verdict, Sundance moved for judgment as a matter of law (JMOL) that the '109 patent was not invalid.  The court granted Sundance's motion, and

denied DeMonte's motion asking for reconsideration in light of <u>KSR International Co. v. Teleflex Inc.</u>, 127 S. Ct. 1727 (2007). DeMonte also moved for JMOL of noninfringement, which the court denied. DeMonte appeals both rulings. Sundance cross-appeals the district court's denial of prejudgment interest for infringing sales made prior to the date it filed suit. For the reasons set forth below, we reverse the district court's judgment that the asserted claims are nonobvious as a matter of law, thereby resolving all issues between the parties.

BACKGROUND

The '109 patent is directed to retractable segmented covering systems for "almost any structure or container," such as truck trailers, swimming pools, porches, and patios. '109 patent col.2 ll.35-43. Independent claim 1, the only asserted claim in this suit, reads as follows:

> A retractable segmented cover system used with a truck trailer comprising a plurality of flexible cover sections with a plurality of substantially parallel supporting bows spaced therebetween and a drive assembly, wherein each cover section is detachably connected between substantially parallel supporting bows, the bows are slideably supported on the truck trailer and at least one bow is fixedly connected to the drive assembly such that the cover system can be extended or retracted by the drive assembly and wherein <u>a cover section can be removed from the cover system independent of the other cover sections</u>.

At trial, relevant to this appeal, DeMonte presented two prior art references to the jury as a basis for a determination of obviousness—U.S. Patent Nos. 4,189,178 (Cramaro) and 3,415,260 (Hall). Cramaro discloses a retractable tarpaulin cover system for use in trucks. The parties agree that the difference between the cover system disclosed in claim 1 of the '109 patent and the Cramaro cover system is that Cramaro does not include "segmented tarps." Sundance's Br. at 26. The parties further

agree that Hall discloses a cover system divided into a number of "flexible screen members." Id. at 27. Hall indicates that its system "may be used as a truck cover." Hall col.6 l.48. Demonte's patent law expert, Daniel Bliss, opined that one of ordinary skill in the art would be motivated to combine Cramaro and Hall.[1] The jury determined that claim 1 of the '109 patent was obvious.

In a decision rendered before the Supreme Court's holding in KSR, the district court granted Sundance's motion for JMOL, ruling that "there was not sufficient evidence for the jury to conclude that one skilled in the art would have combined Hall and Cramaro so as to arrive at the invention—a segmented tarp used for truck covers." Sundance, Inc. v. DeMonte Fabricating Ltd., No. 02-73543, 2006 WL 2708541, at *5 (E.D. Mich. Sept. 20, 2006). In particular, the district court concluded that Hall was "prior art outside of the truck environment which used segmented tarps," "a segmented pool cover," and "a segmented non truck cover." Id. at *3-4.

In its ruling, the court also noted that Mr. Bliss "did not cite any references in either [Hall or Cramaro] to support his conclusion" that a person of ordinary skill in the art would have a motivation to combine the references. Id. at *5. Nor did the court find any "suggestion in the art to combine" Cramaro—which the court characterized as a truck cover—with Hall—which the court characterized as a non truck cover. Id. The court reasoned that its conclusion—that DeMonte failed to adduce sufficient evidence for the jury to conclude that one skilled in the art would have combined Hall and Cramaro—was "especially true in light of the fact that the level of skill in the art is low

---

[1] Sundance objected to the admission of the testimony of Mr. Bliss on the issues of invalidity and noninfringement, arguing that Mr. Bliss was not qualified as a technical expert, but merely a patent law expert. As explained below, the district court erroneously admitted the testimony over Sundance's objection.

and focuses on tarps used for <u>truck covers</u>." <u>Id.</u> (emphasis added).  The district court further stated that "secondary considerations . . . support[] a finding of nonobviousness," including "long-felt but unresolved need" and "copying." <u>Id.</u>  After the Supreme Court decided <u>KSR</u>, DeMonte moved for reconsideration, which the district court denied, stating that it had not rigidly applied the teaching, suggestion, and motivation test in its original analysis.

DeMonte has timely appealed, and Sundance has timely cross-appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I.

We first consider the district court's admission of testimony from DeMonte's patent law expert, Mr. Bliss.  Federal Rule of Evidence 702 provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts.

Under <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 597 (1993), and Rule 702, courts are charged with a "gatekeeping role," the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant.  <u>See also</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 149 (1999) (holding that Rule 702 applies not only to "scientific" testimony, but to all expert testimony).  Patent cases, like all other cases, are governed by Rule 702.  There is, of course, no basis for carving out a special rule as to experts in patent cases.

We note that "[a]dmission of expert testimony is within the discretion of the trial court." Acoustical Design, Inc. v. Control Elecs. Co., 932 F.2d 939, 942 (Fed. Cir. 1991) (citing Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962)). We review the admission of expert testimony for an abuse of discretion. Id. (citing Seattle Box Co. v. Indus. Crating & Packing, Inc., 731 F.2d 818, 826 (Fed. Cir. 1984)); see also Kumho Tire Co., 526 U.S. at 152 ("[A] court of appeals is to apply an abuse-of-discretion standard when it reviews a trial court's decision to admit or exclude expert testimony.").

DeMonte submitted the expert report of Mr. Bliss to the district court, indicating that Mr. Bliss would opine on: USPTO practices and procedures (eight pages explaining prosecution and reexamination); claim construction (four pages interpreting the claim construction ruling); noninfringement (seven pages concluding that the claims of the '109 patent are not infringed); invalidity, including anticipation and obviousness (thirteen pages concluding that the claims of the '109 patent are invalid); and inequitable conduct (six pages concluding that the '109 patent is unenforceable due to inequitable conduct). Expert Report of Daniel H. Bliss (Docket No. 99-4, Mar. 28, 2006) (Report). Sundance objected, filing a motion in limine to preclude Mr. Bliss from testifying at trial. Sundance argued that Mr. Bliss "lacks appropriate technical background in the field of the invention." Sundance also argued that Mr. Bliss was not qualified to testify about "his interpretation of the law governing invalidity, infringement," or ultimate legal conclusions.

Opposing the motion, DeMonte argued that Mr. Bliss was qualified because he "is a patent attorney with extensive experience in patent law and procedure," and that his testimony was admissible because courts may allow patent law experts to testify on "general procedures involved in the patent application process," citing Bausch & Lomb,

Inc. v. Alcon Laboratories, Inc., 79 F. Supp. 2d 252, 254-55 (W.D.N.Y. 2000). DeMonte further argued that Mr. Bliss's testimony should be admitted even though "Mr. Bliss may not have experience specifically with segmented tarpaulin systems" because his qualifications are "an appropriate subject for cross examination, but would go more to the weight to be given his testimony," citing Cameco Industries, Inc. v. Louisiana Cane Manufacturing, Inc., No. 92-3158, 1995 U.S. Dist. LEXIS 11294, at *10-11 (E.D. La. July 27, 1995). The district court denied the motion in limine without comment, thereby permitting Mr. Bliss to testify before the jury on all of the issues submitted in his expert report.

Although the motion in limine was denied in its entirety, Mr. Bliss did not actually testify as to all of the matters contained in his report. Mr. Bliss "was not asked to testify in general on patent office practice and procedure." Oral Arg. 1:23-1:27, available at http://oralarguments.cafc.uscourts.gov/mp3/2008-1068.mp3. [2] Rather, his testimony focused on the issues of noninfringement and invalidity, including the factual predicates underlying obviousness as well as his conclusion that claim 1 of the '109 patent would have been obvious.

In their appellate briefs and during oral argument, the parties disputed whether the district court properly admitted the testimony of Mr. Bliss on the issues of noninfringement and invalidity. Sundance argues that "[a]lthough DeMonte refers to Mr. Bliss as a technical expert, he has no technical experience in the field of truck[s] or tarps and practiced as an engineer for but a year and a half in unrelated areas. He was

---

[2] We have no reason to doubt that Mr. Bliss—an experienced patent attorney—is qualified to testify as to patent office procedure generally. See Bausch & Lomb, Inc., 79 F. Supp. 2d at 254-55 (allowing testimony directed to general procedures involved in the patent application process).

not qualified at trial as a technical expert." Sundance's Br. at 14 n.4. DeMonte responded that "reliance on a 'patent expert' for 'an opinion on the ultimate question,' such as infringement or invalidity, is entirely appropriate." DeMonte's Reply Br. at 5 n.1 (citing Snellman v. Ricoh Co., 862 F.2d 283, 287 (Fed. Cir. 1988)).

We conclude that the district court abused its discretion in denying Sundance's motion in limine; Mr. Bliss is not qualified to testify as an expert witness on the issues of infringement or validity. These issues are analyzed in great part from the perspective of a person of ordinary skill in the art, and testimony explaining the technical evidence from that perspective may be of great utility to the factfinder.[3]

Despite the absence of any suggestion of relevant technical expertise, Mr. Bliss offered expert testimony on several issues which are exclusively determined from the perspective of ordinary skill in the art. In elaborate technical detail, Mr. Bliss opined on how the disclosed invention, accused system, and prior art operate, including his opinions as to the noninfringement and invalidity of claim 1 of the '109 patent.

---

[3] Patent claims are construed from the perspective of one of ordinary skill in the art. See Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). For the purposes of the doctrine of equivalents, identification of the claim elements as well as the determination of infringement itself are done from the perspective of one of ordinary skill in the art. See AquaTex Indus., Inc. v. Techniche Solutions, 479 F.3d 1320, 1329 (Fed. Cir. 2007) (citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609 (1950)). What a prior art reference discloses or teaches is determined from the perspective of one of ordinary skill in the art. Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991) ("There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention."). Whether a patent claim would have been obvious in light of prior art references is determined from the perspective of one of ordinary skill in the art. See KSR, 127 S. Ct. at 1742 (2007) (emphasizing that, in determining whether a patent combining known elements would have been obvious, the focal question is whether the combination was obvious to a person with ordinary skill in the art).

DeMonte failed to explain how Mr. Bliss possesses the relevant expertise in the pertinent art.[4] Mr. Bliss has no experience whatsoever in "the field of tarps or covers." Nor does DeMonte purport that Mr. Bliss's experience with engines and the like is sufficiently related to covers. See Cameco Indus., 1995 U.S. Dist. LEXIS 11294, at *10-11 (finding that expert's education and experience were "sufficiently related to the subject matter of plaintiff's patent to allow him to speak with authority on the issues of validity and infringement"). Mr. Bliss is not "qualified as an expert by knowledge, skill, experience, training, or education" in the pertinent art; we therefore fail to see how he could "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

---

[4]  In its opening brief, DeMonte described Mr. Bliss as its "technical expert." DeMonte's Br. at 24. Nonetheless, the record clearly indicates that DeMonte at all times proffered Mr. Bliss as a patent law expert, and not as a technical expert. In response to Sundance's interrogatories, DeMonte stated: "As to Daniel H. Bliss, the witness will be called to testify as a patent expert." Def.'s Fourth Supp. Resp. to Pls.' First Set of Interrogs. to Defs. at 3 (emphasis added). DeMonte's response to Sundance's motion in limine presents Mr. Bliss as "a patent attorney with extensive experience in patent law and procedure," without any reference to his technical background. DeMonte did not suggest that Mr. Bliss was one of ordinary skill in the art or a technical expert. Rather it relied upon examples where patent law experts have been permitted in district courts to offer testimony on claim construction, infringement and validity, citing Bausch & Lomb and Cameco.

Mr. Bliss's pre-trial expert report details his years of experience as a patent attorney, including preparation of opinions on invalidity and knowledge of USPTO practice and procedure. Report at 3. The report does not present Mr. Bliss as having any personal technical experience, or skills in the field of mechanics, much less covers. Although Mr. Bliss also stated in his report that he has experience in "the vehicle field," support for this statement was only in the context of preparing and prosecuting patent applications for inventions in the vehicle field and in testifying "as an expert on patent law and patent office procedure" in connection with a separate suit also related to the vehicle field. Id. at 3. Nor does his appended curriculum vitae reveal any relevant technical experience with vehicle or other cover systems. Id. at 50. Indeed, his report opines that the level of ordinary skill in the art "would be someone with a high school education and one or more years of experience in the field of tarps or covers"— experience that he himself lacks. Id. at 40.

Admitting testimony from a person such as Mr. Bliss, with no skill in the pertinent art, serves only to cause mischief and confuse the factfinder. Unless a patent lawyer is also a qualified technical expert, his testimony on these kinds of technical issues is improper and thus inadmissible. Because Mr. Bliss was never offered as a technical expert, and in fact was not qualified as a technical expert, it was an abuse of discretion for the district court to permit him to testify as an expert on the issues of noninfringement or invalidity.

DeMonte relies on Snellman, 862 F.2d at 287, for the proposition that we previously allowed patent law experts to testify on the meaning of technical terms in claims and to give opinions on ultimate questions of infringement and invalidity. DeMonte mischaracterizes our holding in Snellman. In Snellman, we acknowledged that there was substantial evidence to uphold the jury verdict which included testimony from a patent law expert. Neither party raised the admissibility of the patent lawyer's testimony nor did we address this issue. The opinion mentions the patent lawyer's testimony in just two sentences without any analysis of the propriety of such testimony. See United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952) (holding that an issue neither "raised in briefs or argument nor discussed in the opinion of the Court" cannot be taken as "a binding precedent on this point").

We have on several occasions upheld a district court's exclusion of testimony by a patent law expert. See, e.g., Medtronic Inc. v. Intermedics, Inc., 799 F.2d 734, 741 (Fed. Cir. 1986) (determining no abuse of discretion where trial court excluded patent law expert's testimony relating to the infringement of the asserted claims); see also Union Carbide Corp. v. Am. Can Co., 724 F.2d 1567, 1572 (Fed. Cir. 1984) (agreeing

with a district court that gave little weight to the opinion of a former patent attorney with no "expertise as to the scope of the field of endeavor of the inventions of the patents in suit or as to what other fields are analogous art"); Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd., 122 F.3d 1040, 1042 (Fed. Cir. 1997) ("Indeed, this court has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide."). In light of all the contrary precedent and the non-existent analysis in Snellman, we conclude that Snellman does not control the disposition in this case.

We hold that it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art. Testimony proffered by a witness lacking the relevant technical expertise fails the standard of admissibility under Fed. R. Evid. 702. Indeed, where an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a witness to testify on the issue who is not qualified as a technical expert in that art. We understand that patent lawyers are often qualified to testify as technical experts, but such a qualification must derive from a lawyer's technical qualifications in the pertinent art.

We do not, of course, suggest that being a person of ordinary skill in the art automatically entitles a witness to testify as an expert on these or other matters. On the other hand, our opinion should not be read as suggesting that Rule 702 requires a witness to possess something more than ordinary skill in the art to testify as an expert. A witness possessing merely ordinary skill will often be qualified to present expert

testimony both in patent trials and more generally. See Fed. R. Evid. 702; see also United States v. Wilson, 484 F.3d 267, 275-77 (4th Cir. 2007) (district court did not abuse discretion under Rule 702 by permitting police officer to testify as to the meaning of coded drug language); United States v. Marler, 614 F.2d 47, 49-50 (5th Cir. 1980) (district court did not err by permitting deputy fire marshal to offer expert testimony on cause of fire). Admission of expert testimony remains subject to the Rules of Evidence and is committed to the discretion of the district court. Fed. R. Evid. 702; Acoustical Design, 932 F.2d at 942.[5]

With regard to invalidity, for example, a witness not qualified in the pertinent art may not testify as an expert as to anticipation, or any of the underlying questions, such as the nature of the claimed invention, what a prior art references discloses, or whether the asserted claims read on the prior art reference. See Acoustical Design, 932 F.2d at 942 (sustaining trial court's preclusion of patent expert from testifying about the drafting of claims to avoid prior art and that the claims in suit read on the prior art, as it would not have been of any benefit to the jury).

Nor may a witness not qualified in the pertinent art testify as an expert on obviousness,[6] or any of the underlying technical questions, such as the nature of the

---

[5]    Those of ordinary skill (or those of extraordinary skill) in the particular art are not, of course, the only witnesses who may testify as experts in a patent trial. For example, patent lawyers might offer testimony in contexts other than noninfringement and invalidity, such as patent office practice and procedure; a chemist not skilled in the particular art at issue might nevertheless appropriately testify as an expert as to the consequences of reacting two chemicals in a particular environment.

[6]    Our holding that it was an abuse of discretion to allow Mr. Bliss to testify on several issues including his opinion on the legal question of obviousness is not a general proclamation as to the admissibility of expert testimony on legal questions. The error here arises from Mr. Bliss's lack of appropriate technical qualifications. Whether a qualified technical expert can testify as to the ultimate question of obviousness is of

claimed invention, the scope and content of prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention. See Medtronic, 799 F.2d at 741; In re Deters, 515 F.2d 1152, 1155 (CCPA 1975) (rejecting patent expert testimony on nonobviousness where patent expert was not a person ordinarily skilled in the art and thus his opinion was "not evidence entitled to any weight in resolving the issue").

DeMonte has failed to demonstrate any possible relevancy or reliability of Mr. Bliss's testimony as to technical matters in light of his lack of relevant technical expertise.[7] Mr. Bliss lacks the necessary expertise to be of assistance to the court or the jury on the technical aspects of this case. The court, in its role as gatekeeper, must exclude expert testimony that is not reliable and not specialized, and which invades the

course left to the discretion of the district court. We note, however, that our court has held that allowing a witness to testify before the jury on claim construction would be improper. See Cytologix Corp. v. Ventana Med. Sys., Inc., 424 F.3d 1168, 1172 (Fed. Cir. 2005) (noting that "[t]he risk of confusing the jury is high when experts opine on claim construction" before the jury); see also Endress + Hauser, 122 F.3d at 1042.

[7] Notably, the District of Delaware has issued guidelines restricting the scope of patent law expert testimony to practice and procedure in the Patent and Trademark Office rather than legal issues and conclusions in an effort to prevent overly expansive expert testimony that may usurp the jury and judge's roles. See Guidelines: Legal Expert Testimony in Patent Cases, http://www.ded.uscourts.gov/SLR/Misc/Guidelines.pdf (last visited Dec. 9, 2008); John E. Kidd & Keeto H. Sabharwal, The District of Delaware: An Ideal Venue for Patent Litigators, 18 Del. Law. 16, 17 (Winter 2000); see also Nisus Corp. v. Perma-Chink Sys, Inc., No. 3:03-CV-120, 2005 U.S. Dist. LEXIS 41068, at *10 (E.D. Tenn. May 27, 2005) (limiting patent expert's testimony just to USPTO practice and procedures); Minn. Mining & Mfg. Co. v. Appleton Papers, Inc., No. 4-95-786, 1998 U.S. Dist. LEXIS 22597, at *4-5 (D. Minn. June 25, 2008) (allowing a former patent examiner with a degree in electrical engineering to testify as to USPTO procedure, but not as to claim construction, infringement, or validity, because he had "not shown that he [wa]s qualified to offer opinions from the perspective of a person of ordinary skill in the relevant art").

province of the jury to find facts and that of the court to make ultimate legal conclusions. Allowing a patent law expert without any technical expertise to testify on the issues of infringement and validity amounts to nothing more than advocacy from the witness stand.[8] The district court's denial of the motion in limine to exclude the testimony of Mr. Bliss, a person not skilled in the pertinent art, was an abuse of discretion.

## II.

We now consider the district court's entry of JMOL overturning the jury verdict of obviousness. Under Sixth Circuit law, we review a grant of a motion for JMOL <u>de novo</u>, using the same standard of review required of the district court. <u>Johnson Controls, Inc. v. Jay Indus. Inc.</u>, 459 F.3d 717, 722 (6th Cir. 2006). JMOL is appropriate when viewing the evidence in a light most favorable to the non-moving party—giving that party the benefit of all reasonable inferences—there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party. <u>Barnes v. City of Cincinnati</u>, 401 F.3d 729, 736 (6th Cir. 2005) (citations omitted).

The consequence of our holding that the testimony of Mr. Bliss should have been excluded is that there was no expert testimony supporting a holding of obviousness; we conclude, however, that no such testimony was required because there are no

---

[8] "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." <u>Daubert</u>, 509 U.S. at 595. This concern is further compounded where the purported witness is an attorney. It is already difficult enough for courts to separate intricate questions of fact in patent cases from equally intricate questions of law. A technically unqualified patent attorney can do much mischief by leading the jury to seemingly sound conclusions without ever providing a well-grounded factual basis in the pertinent art. <u>See</u> <u>Bausch & Lomb, Inc.</u>, 79 F. Supp. 2d at 255 ("Simply put, testimony that is designed to instruct the jury on the applicable law is not admissible because, by purporting to do what lies with the exclusive province of the court, it cannot be helpful to the jury.").

2008-1068,-1115                           13

underlying factual issues in dispute as to obviousness. The technology is simple and neither party claims that expert testimony is required to support such a holding. See Union Carbide, 724 F.2d at 1573 ("[T]he references and appellant's invention are easily understandable without the need for expert explanatory testimony."); see also Centricut, LLC v. Esab Group, Inc., 390 F.3d 1361, 1369-70 (Fed. Cir. 2004); Iron Grip Barbell Co., v. USA Sports, Inc., 392 F.3d 1317, 1323 n.3 (Fed. Cir. 2004). We reverse the district court's grant of JMOL and conclude as a matter of law that claim 1 of the '109 patent would have been obvious and is therefore invalid. See KSR, 127 S. Ct. at 1745-46 ("The ultimate judgment of obviousness is a legal determination."). The factual inquiries underlying our determination of obviousness are not in material dispute regardless of the admissibility of the testimony of Mr. Bliss. See id. ("Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate.").

## A.

On appeal, Sundance argues that the combination of Cramaro and Hall does not disclose every limitation of claim 1 of the '109 patent. There is no dispute that Cramaro discloses a truck cover including every limitation of claim 1 except "a cover section [that] can be removed from the cover system independent of the other cover sections." The district court construed the word "independent" to mean that "any one cover section can be removed from the cover system without removing any other cover section," a definition that neither party challenges. The parties do not dispute that Hall discloses a cover made up of a number of cover sections. Rather, Sundance argues that any

particular cover section of Hall cannot be removed "without removing any other cover section." Sundance contends that, in order to remove one of the cover sections in Hall, a face plate must be completely removed such that the adjoining edge of adjacent sections will drape and that they will no longer be part of the cover. In other words, the process of removing one cover section of the Hall invention requires releasing one edge of the adjacent cover sections, and these adjacent cover sections are then left hanging from the cover frame. Oral Arg. at 22:10-23:15. According to Sundance, these hanging cover sections are no longer part of the cover, and thus the section that had been between the two hanging sections could not have been removed "without removing any other cover section."

Even accepting Sundance's explanation of how the cover in Hall operates, there is no serious dispute that in Hall, a cover section can be removed independent of the other cover sections. The question is not whether the hanging sections are <u>part of the cover</u>; the question is whether the hanging sections have been <u>removed</u>. After a first section is removed, the two cover sections adjacent to the first section are still attached to the cover—they have not been removed. Thus, a combination of Hall and Cramaro satisfies every limitation of claim 1 of the '109 patent. We next turn to whether the combination would have been obvious at the time of the invention.

## B.

The district court's decision to overturn the jury verdict was based upon its misunderstanding of Hall as "prior art outside of the truck environment which used segmented tarps." <u>Sundance</u>, 2006 WL 2708541 at *3-4 (describing Hall as "a segmented pool cover" and "a segmented non truck cover"). Sundance does not

dispute that this determination was an error, doubtless because Hall explicitly and repeatedly suggests that its cover system may be used as a truck covering. In the "field of the invention" section of the specification, the patent states that a "field of art to which this invention might pertain is the general class of land vehicles, bodies and tops and in particular to the general subclass of tops and more particularly to load covers and collapsible standing tops." Hall col.1 ll.29-34. The specification also describes one preferred embodiment of the Hall invention as being "used as a truck cover which may be moved to the cab or toward the end of the truck as desired." Id. at col.6 ll.48-50. The specification further notes that "[i]t is, of course, realized that this type of structure may be used to provide an expandable cover for trucks." Id. at col.6 ll.66-67.[9] The district court based its grant of JMOL on a lack of motivation to combine Cramaro and Hall, a conclusion which itself was based on the district court's misunderstanding of Hall as not within the scope of the relevant art.

"[I]n many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." KSR, 127 S. Ct. at 1742. Such a combination is more likely to be obvious where it "'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement." Id. at 1740 (quoting Sakraida v. AG Pro, Inc., 425 U.S. 273, 282 (1976)). The truck cover of claim 1 of the '109 patent is the result of precisely such an obvious combination.

---

[9] In addition, the '109 patent itself clearly discloses that its invention is not limited for use in truck environments and can be used with swimming pools, just like the Hall invention. See '109 patent col.2 ll.29-40 ("For example, the present cover system could be used as an awning over a porch or patio, or as a cover for a swimming pool.").

In combination with each other, the cover system of Cramaro performs exactly the function that it performs independent of Hall, and the removable cover sections of Hall perform exactly the function that they perform independent of Cramaro. The elements of the cover system of Cramaro perform several functions, including protection of the cargo, containment of the cargo, and retraction of the cover. None of these functions changes upon the simple act of replacing the one-piece cover of Cramaro with the segmented cover of Hall. The segmented cover of Hall performs the function of allowing individual replacement of the cover sections. This function does not change upon incorporation into the Cramaro cover system. The combination simply mechanizes Hall's segmented cover or segments Cramaro's mechanized cover.

In KSR, the Court considered the obviousness of a claim directed to an adjustable automobile throttle pedal combined with an electronic sensor. The relevant prior art included a patent that disclosed an adjustable pedal and another that disclosed an electronic sensor. The Court held that it saw "little difference between the teachings of [the relevant prior art] and the adjustable electronic pedal disclosed in [the claim]. A person having ordinary skill in the art could have combined [the adjustable pedal] with a pedal position sensor in a fashion encompassed by [the claim], and would have seen the benefits of doing so." KSR, 127 S. Ct. at 1743.

Just as with the claim at issue in KSR, the segmented truck cover claimed in the '109 patent represents the "mere application of a known technique to a piece of prior art ready for the improvement." Id. at 1740. It would have been obvious to replace the one-piece cover in Cramaro with the segmented cover of Hall. Indeed, the benefits of combining Hall and Cramaro would have been inescapably obvious to a person of

ordinary skill in the art at the time of the invention of the truck cover claimed in the '109 patent. Adding the removable cover sections of Hall to Cramaro would give the resulting design <u>exactly</u> the same benefit as Hall—individually replaceable cover sections. Neither party has suggested that the combination of the removable cover sections of Hall with the cover system of Cramaro yields anything "more than one would expect from such an arrangement," nor is any such result apparent. <u>Sakraida</u>, 425 U.S. at 282.

The '109 patent explains that "it would be desirable to have a retractable cover system wherein only the damaged portion could easily be removed and replaced without replacing or disassembling the entire cover system." '109 patent col.2 ll.12-17. Hall explained that its segmented cover "can be prefabricated for ready assembly and that replacement and repair is easily provided for." Hall col.6 ll.28-32. The remaining work to incorporate the replaceable cover sections of Hall into the design of Cramaro is "the work of the skillful mechanic, not that of the inventor." <u>Sakraida</u>, 425 U.S. at 282 (quoting <u>Hotchkiss v. Greenwood</u>, 52 U.S. (11 How.) 248, 267 (1851)). We conclude that a cover designer of ordinary skill, at the time of the invention, would have found it obvious to incorporate the removable cover sections of Hall into the cover system of Cramaro.

Secondary considerations of nonobviousness—considered here by the district court—simply cannot overcome this strong prima facie case of obviousness. <u>Agrizap, Inc. v. Woodstream Corp.</u>, 520 F.3d 1337, 1344 (Fed. Cir. 2008); <u>see also</u> <u>Anderson's-Black Rock, Inc. v. Pavement Salvage Co.</u>, 396 U.S. 57, 61 (1969) (considering argument of secondary considerations but holding that "those matters without invention

will not make patentability"); <u>Leapfrog Enters., Inc. v. Fisher-Price, Inc.</u>, 485 F.3d 1157, 1162 (Fed. Cir. 2007) (holding that the objective considerations of nonobviousness presented, including substantial evidence of commercial success, praise, and long-felt need, were inadequate to overcome a strong showing of primary considerations that rendered the claims at issue invalid); <u>Dystar Textilfarben GMBH & Co. Deutschland KG v. C.H. Patrick Co.</u>, 464 F.3d 1356, 1371 (Fed. Cir. 2006) ("The presence of certain secondary considerations of nonobviousness are insufficient as a matter of law to overcome our conclusion that the evidence only supports a legal conclusion that claim 1 would have been obvious."). Based on the foregoing, we reverse the district court's holding that the asserted claims are nonobvious as a matter of law.

## CONCLUSION

Because we hold as a matter of law that claim 1 of the '109 patent is invalid for obviousness, we need not address the issues of infringement or prejudgment interest. The judgment below is

<u>REVERSED.</u>