Filed 12/31/25



| VERMONT SUPERIOR COURT | CIVIL DIVISION |
|---|---|
| Chittenden Unit | Case No. 21-CV-00323 |

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org

---

**Bruce Kelley, et al v. Franklin County Rehab Center, LLC d/b/a Franklin County Rehabilitation Center and d/b/a Franklin County Rehabilitation & Adult Care Center, et al**

---

## ENTRY REGARDING MOTION

**Title:** Motion to Reconsider; Motion to Reconsider; Motion; Motion Entry Order of 8/18/25; Entry Order of August 18, 2025, Supplemental; to Reconsider Entry Order of 8/18/25 - 2nd Supplemental; to Reconsider Entry Order of 8/18/25 (Third Supplemental) (Motion: 17; 19; 22; 23)
**Filer:** Vincent Illuzzi; Vincent Illuzzi; Vincent Illuzzi; Vincent Illuzzi
**Filed Date:** August 29, 2025; September 11, 2025; September 29, 2025; October 03, 2025

The motions are DENIED.


Plaintiffs Bruce and Nancy Kelley have filed multiple motions seeking a reconsideration of the Court's August 18, 2025 decision on Defendants Franklin County Rehabilitation & Adult Care Center and Dr. Teig Marco's motions for summary judgment. Plaintiffs' approach to both the underlying motion practice as well as the present motions to reconsider have been unconventional and inconsistent with Rule 7's standards. In both responding to the motion for summary judgment and in the motion for reconsideration, Plaintiffs has filed multiple "supplemental" motions that function effectively as sur-replies and have extended the briefing process well beyond the normal limits of what briefing should encompass. While the Court has not issued an order to end this type of drip-drip briefing, it does not condone or endorse such practice.

In the present instance, Plaintiffs have filed not only a Motion to Reconsider (August 29, 2025) but a Motion for Interlocutory Appeal (same date), a First Supplemental Motion to Reconsider (September 11, 2025), a Second Supplemental Motion to Reconsider (September 29, 2025), and a Third Supplemental Motion to Reconsider (October 3, 2025), as well as responsive filings to the Defendants' Oppositions. Each of these motions has sought to expand the record and in the case of the Second and Third Supplemental Motions, introduce entirely new opinions from expert witnesses that the Court will address below. The result has been a haystack of

pleadings in which the Court must dig through layers of argument and new opinions to determine if, in fact, there is a needle of good cause to revisit the prior denial.

The Vermont Supreme Court has expressed stated that Courts are not obligated to dig through desultory briefing and records to resolve summary judgment motions. *Travelers Ins. Companies v. Demarle, Inc. USA*, 2005 VT 53, ¶¶ 6–9 (mem.). As Rule 56 requires, parties must present a "concise statement of material facts as to which it is contended that there exists a genuine issue to be tried." V.R.C.P. 56(c)(2). The window for motions to reconsider are even more narrow as the motion is not a second chance to re-litigate or respond to the Court's orders, it is a vehicle to "correct manifest errors of judgment or to present newly discovered evidence." *Brislin v. Wilton*, No. 2009-236, 2010 WL 712556, at *3 (Vt. Feb. 25, 2010).

The issue before the Court in these on-going filings, as was at the heart of the underlying summary judgment motion, is the limited and narrow question of whether Plaintiffs' have sufficient expert testimony to establish that the actions or inactions of FCRC staff and Dr. Marco during the window of time after the hoyer chair lift at 4:00pm on March 2, 2018 and before his removal to Northwest Medical Center before 7:00am on March 3, 2018, either caused or contributed to the injury that Mr. Kelley ultimately suffered. *Wilkins v. Lamoille County Mental Health Services, Inc.*, 2005 VT 121, ¶¶ 12–14. This "but for" causation standard requires Plaintiffs to prove that the injury "would not have occurred 'but for' the defendant's conduct." *Collins v. Thomas*, 2007 VT 92, ¶ 8.

Given Mr. Kelley's complicated medical history as well as the chain of events leading up to his ultimate paralysis, this standard requires expert witness testimony. *Taylor v. Fletcher Allen Health Care*, 2012 VT 86, ¶¶ 9, 10. "But for" causation is also a different and distinct element from Plaintiffs' burden to establish the standard of care that each of the Defendants were obliged to follow, and which they are alleged to have breached.

In this case, Plaintiffs have presented sufficient evidence to establish—at least for the purpose of summary judgment—their proposed standard of care as well as the alleged breaches that Dr. Marco and FCRC staff committed against that standard of care. Plaintiffs can also show the Mr. Kelley suffered a substantial injury. What Plaintiffs have struggled to show is how the alleged breaches of Dr. Marco and the evening FCRC staff caused Mr. Kelley's paralysis. This is because Plaintiffs do not contend that either Dr. Marco or the evening FCRC staff caused the subdural hematoma that led to his paralysis. Instead, Plaintiffs allege that the staff's failure to

perform neurological exams of Mr. Kelley resulted in a delay of returning Mr. Kelley to the hospital where he could have the surgery to relieve the hematoma. Put more plainly, Plaintiffs have to show that the delay from Dr. Marco's and the evening FCRC staff's inactions put Mr. Kelley back in the hospital beyond when a surgery could have prevented his paralysis. That is "but for" causation in this case.[1]

The problem with Plaintiffs' evidence coming into the present motion practice is that none of the relevant experts have offered testimony or opinion that answers this issue. While there has been general testimony that "time is function" in such cases, there has been no expert testimony saying but for this specific delay, doctors would have saved all or part of Mr. Kelley's neurological function in his lower extremity. This is, in part, because of the complicated nature of both Mr. Kelley's medical history as well as the complicated series of events that led to the subdural hematoma. There is expert testimony to suggest that the hematoma may have started in the hospital or in the ambulance ride to FCRC. There is also evidence to suggest that the botched hoyer chair lift may have caused or contributed to the injury. These factors suggest a complicated timeline that puts more uncertainty into the later and allegedly contributing factors, like the time that Mr. Kelley spent at FCRC.

As one link within the chain of events that led Mr. Kelley from initial recovery from vascular surgery at the end of February to his paralysis on the evening of March 3d, the time at FCRC was always a possible contributing suspect. Plaintiffs' burden, however, is not to merely speculate about the role of the delay at FCRC or to join these defendants by their mere proximity to the events, but to provide evidence within a reasonable degree of medical certainty, as offered by an expert witness, that links the defendants' inactions causatively to the injury.

As FCRC and Dr. Marco's initial motions demonstrated, all of Plaintiffs' experts on causation stopped short of this evidence. Dr. Rachlin and Dr. Eskey spoke about the effects that a delay between injury and treatment can have on a patient with a subdural hematoma against the spine, but neither of them offered an opinion in deposition that stated but for the delay alleged to

---

[1] To draw out this distinction by way of example, if the ambulance taking Mr. Kelley from FCRC to Northwestern Medical Center had loaded him feet-first such that the doors hit him on the head, Plaintiffs would likely have evidence of the breach of the duty of care, but they would still have to show that the bump on his head caused or contributed to his paralysis. If they could not, then the ambulance crew, no matter how improper their actions, could not be held liable for the ultimate damages. It would be insult to injury but not negligence.

be caused by Dr. Marco and the evening FCRC staff, Mr. Kelley would have had a different outcome.

In their motions for reconsideration, Plaintiffs seek to relitigate this issue by pointing to the same or similar portions of the record that the Court reviewed in the motion for summary judgment. As Defendants note, much of this evidence, particularly from Kristin Husher and Dr. Christopher Davey, does not address the complicated issue of "but for" causation. Instead, the citations to the record cite to the opinions that Ms. Husher and Dr. Davey have given that the Defendants' actions breached their respective duties of care and that these breaches resulted in several hours of delay in returning Mr. Kelley to the hospital. Again, none of the evidence shows that this delay caused Mr. Kelley to lose any portion of recovery that he would have had if the delays had not occurred. Neither Dr. Rachlin, nor Dr. Eskey offer such an opinion.

The two new pieces of evidence offered by Plaintiffs in their Second and Third Supplemental filings are opinions by Dr. Davey and Ms. Husher that expand their original opinions and drift into the issue of causation. Both offer new opinions that if the FCRC staff had performed examinations the night of March 2, 2018, they would have discovered Mr. Kelley's neurological issues and returned him to the hospital, and the earlier return would have resulted a favorable outcome saving some or all of Mr. Kelley's lower neurological functions and avoiding paralysis.

If such opinions had been disclosed at the beginning of this case or during the normal course of discovery, Plaintiffs might be in a different posture with their claims against Dr. Marco and the evening FCRC staff. Coming at the last minute, well after the time for discovery, from two unqualified witnesses, and in the truncated and conclusory form of new, post-deposition affidavits, the Court finds three significant reasons to reject Dr. Davey and Ms. Husher's newly minted opinions.

First, the opinions are not expert opinions. They are conclusory statements. Under Rule 702, an expert opinion is permitted to help the finder of fact understand complicated or specialized concepts. These can be nearly anything from the complicated medical principles of how a particular disease affects a body, to how water flows through different types of soil, or to how a piece of machinery works and is maintained. What each opinion shares in common is that it provides an explanation and illuminates a particular process or phenomena to assist the fact-finder's understanding. V.R.E. 702; see also *K.Kreiling, Expert and Opinion Evidence in*

*Vermont: Developments, Profiles, and Emerging Concerns for Reliability of Scientific Evidence*, 17 Vt. L.Rev. 109, 117–19 (Fall, 1992) (describing the purpose and expansive nature of permissible expert testimony). In Ms. Husher's and Dr. Davey's supplemental testimony, they do not offer an opinion as to why or how the delays affected Mr. Kelley's neurological condition, they simply opine that it did and that but for the delays, Mr. Kelley would have had a better outcome and avoided paraplegia. Unlike their opinions concerning the standard of care, these new opinions offer no analysis, refer to no specialized knowledge or basis, and are conclusory. Such statements are not admissible as expert witness opinions under V.R.E. 702. *Vale v. United States*, 673 Fed. Appx. 114, 116 (2d Cir. 2016) (holding that expert testimony is "inadmissible as unreliable where it consists of conclusory and speculative opinions"); see also *In re Hinesburg Hannaford Act 250 Permit*, 2017 VT 106, 51 (rejecting a statement from an expert as conclusory).

Second, Dr. Davey and Ms. Husher's newly minted opinions are beyond the scope of their expertise. Both witnesses were disclosed as experts in the field of nursing home and rehabilitative care. Dr. Davey is a medical doctor with extensive experience in providing medical care to patients in nursing home facilities. Ms. Husher has a similar nursing background. Neither are trained or experienced in neurology or similar area of expertise, and neither were disclosed as being capable of providing such testimony. As Defendants note, both have in their prior deposition expressly disclaimed any knowledge or basis for opining about the causative issues behind Mr. Kelley's neurological issues that they have now sought to offer.

Under Rule 702, an expert's testimony must match their area of competence on which their qualification rests. See, e.g., *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008) (unless a patent lawyer is also a qualified technical expert, his testimony on technical issues is improper and thus inadmissible); *McCullock v. H.B. Fuller Co.*, 981 F.2d 656, 657 (2d Cir. 1992) (in products-liability action alleging injury from inhalation of glue vapors, trial court did not err in excluding testimony of plaintiff's expert, an electrical and industrial engineer, since his background would only qualify him to testify as to the need for a ventilation system, but the issue in dispute was the adequacy of a warning label); *Watkins v. Schriver*, 52 F.3d 769, 771 (8th Cir. 1995) (holding that trial court did not err in refusing to permit neurologist to testify about forensic medicine). In this case, both Dr. Davey's and Ms.

Husher's opinions are well outside of their areas of competency, and the new opinions are not permissible within the limits of Rule 702.

Third, these statements are untimely. Discovery in this matter largely ended in October of 2023. While the Court has allowed certain extensions, Plaintiffs have not sought, nor have they received an extension for either of the witnesses to expand the scope of their testimony. These new opinions, which are not based on newly discovered evidence but are specifically crafted to address shortcomings in Plaintiffs' case, are simply too late in the process to be admitted. They have come after depositions and motion practice and are both entirely new and inconsistent with both witnesses' prior deposition testimony, their expert disclosures, and even their expert qualifications. As such, the Court will not permit these late opinions, which represent new areas of testimony from existing witnesses. V.R.C.P. 26(b)(5)(A)(i).

Based on these factors, both collectively and individually, Dr. Davey's and Ms. Husher's new opinions on "but for" causation are not admissible and cannot form the basis for any reconsideration.

## ORDER

Based on the foregoing, Plaintiffs' motions for reconsideration are **Denied.**

Electronically signed on 12/30/2025 6:35 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge